UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 5:12-cr-37 |
| ) | |
| DEREK THOMAS ) | |
| Defendant. ) | |

### ATTORNEY AFFIDAVIT REGARDING PETITION OF DEREK THOMAS

Michael L Desautels, an attorney admitted to practice law in the state of Vermont, states as follows:

1. This affidavit is submitted to comply with this Court's order of May 19, 2017, which directed that I file an affidavit regarding Mr. Thomas's petition filed pursuant to 28 U.S.C. §2255 and which alleges ineffective assistance of counsel.

2. I represented Mr. Thomas from early March 2012 until December 5, 2012. On the latter date, Chief Judge Reiss granted a motion that I had filed asking to be permitted to withdraw as counsel for Mr. Thomas. (On December 7, 2012, Judge Reiss appointed Elizabeth Mann to represent Mr. Thomas per the Criminal Justice Act as attorney for Mr. Thomas).[1] See Doc. No. 63.

3. In order to make this affidavit I reviewed the court docket for this case and the pleadings referenced in that docket.

4. At the beginning of my representing Mr. Thomas, he was charged with having possessed images of child pornography by means of a computer. In light of this charge, my work on Mr. Thomas's behalf was focused on issues regarding law enforcement's obtaining a warrant to search for and seize his computer, whether such images were contained on a computer that he had possessed, and whether the government could prove that Mr. Thomas had knowingly possessed such images.

5. The April 19, 2017, order by Judge Conroy that directed me to file this affidavit (Doc. No. 60) particularized the allegations by Mr. Thomas to which defense counsel are to respond. Those allegations and my responses are below.

**A. Thomas's Citizenship Status**

---

[1] Now Judge Mann, of the Vermont Superior Court.

6. I did not represent him in the presentence investigation and sentencing phases and therefore did not have cause or reason to object to such information in the presentence report. As to any alleged incorrect assertion about citizenship in reports that were part of the pretrial discovery, including police reports, an investigator with the Federal Public Defender Office and I obtained and incorporated Mr. Thomas's history and other background information into our overall investigation and defense preparation on his behalf. My understanding and recollection are that his citizenship status was not a significant issue as to the investigation and legal work that we performed.

**B. Alleged Refusal to Interview and Call Defense Witnesses**

7. Members of the Federal Defender Office and I interviewed several people in connection with his case. I do not have a recollection of Mr. Thomas requesting that I cause to have interviewed "the residents of the Colchester home where he was first apprehended— namely, one of Thomas's female partners, and her two minor sons." With regard to the other allegations in this part of Mr. Thomas's petition, I believe that I interviewed or caused to have interviewed all persons who might have aided an aspect of the defense of Mr. Thomas.

**C. Alleged Refusal to Investigate**

8. Mr. Thomas alleges that I should have investigated why the government did not find the P2P program Shareaza installed on his computer at the time it was reviewed by the government's forensic analyst. My review of the pleadings, the docket, and my recollection, all lead me to assert that all legal and forensic issues known to me and other members of the Federal Defender Office were investigated thoroughly and, in fact, were raised within our suppression motions that were filed and litigated.

9. Regarding Mr. Thomas's complaint that I failed to investigate the fact that law enforcement used a "historical" investigative technique, it is my belief and assertion that all legal and forensic issues pertaining to items allegedly found by the government to have been on Mr. Thomas's computer pertinent to the crimes charged in the indictment were investigated thoroughly. Further, it is my belief that if such issues were deemed to be legally and/or factually relevant, then they were raised in pretrial suppression motions that I prepared, filed, and litigated in court on a hearing on such motion(s).

10. Regarding the claim that I did not investigate "issues of officer Eno's training and knowledge of proper investigative procedures," and issues pertaining to Mr. Thomas's argument that he was actually innocent of the knowing production or possession of child pornography, it is my recollection and assertion that all legal and factual issues, including investigative and forensic issues, pertaining to the charges against Mr. Thomas were carefully considered by me and the Federal Defender Office and incorporated into our defense work where applicable. I note that a significant part of the work that I did and my

office assisted on in representing Mr. Thomas involved preparing, filing, and litigating suppression motions, and that the hearing on such motions involved directing and cross-examining witnesses.

### D. Discovery

11. I reviewed all the evidence provided by the government during discovery. I also reviewed the evidence with Mr. Thomas, including at the Essex County Correctional Facility in New York State, as well as in other meetings and phone conferences. The suppression motions that I filed and the conducting of a hearing on such motions demonstrate that I had reviewed the discovery.

12. As to any redactions in the discovery provided by the government, and Mr. Thomas's claim that such redactions should have been investigated and objected to, in my estimation the discovery that was provided to me did not contain redactions that in any way prejudiced Mr. Thomas's defense or my ability to properly represent him.

### E. Pretrial Motions to Suppress

13. Mr. Thomas complains of my apparent decision to not raise in suppression motions that "law enforcement did not actually check to see if the wireless router at the target IP address was secure or not." However, in the suppression motions that I filed I did raise issues pertaining to whether a wireless router at the target IP address was secure. This is evidenced in the initial suppression motion. See Doc. No. 28. That motion notes, in the background section:

> On February 1, 2012, [Law Enforcement] noted that 15 networks were active in the area and that five were unsecured.… On February 7, 2012, they observed that seven networks were active in the area and that two were unsecured. On February 8, 2012, they noted that 29 networks were active in the area and that eight were unsecured. [Bates 000003-000006, defense exhibit B]. The agents did not determine which of the wireless networks was associated with the IP address in question or whether the wireless network associated with the IP address was secured or unsecured. See document 28 at first paragraph, page 2.

14. I also noted in that suppression motion that "[T]he affidavit simply asserted that there was probable cause to believe that 'the computer' was an instrumentality of the crimes being investigated, but again, failing to mention that, because there was a wireless network, the agents had not identified a particular computer or user as the targets."

15. The "Argument" section in the same suppression motion, seeking an order suppressing evidence of all items found on the computer linked with Mr. Thomas, asserted that:

> The existence of the numerous wireless networks, both secured and unsecured, significantly weakens the nexus between the items sought and the place to be searched. Without determining whether the wireless network utilizing the IP address was secured, the authorities had no way of satisfying the Fourth Amendment's particularity requirement and ensuring that it was in fact the subscriber or an authorized user that was committing the offense in question.
>
> For the reasons stated above Mr. Thomas respectfully argues that the failure of the affidavit submitted to report on the investigation into wireless networks or even to mention the existence of wireless networks is fatal and that all evidence seized should be suppressed. (*See* last two paragraphs, at page 6, Doc. 28.)

16. The District Court ordered that a hearing be held on the issue of whether "the search warrant was invalid because of material omissions from the supporting affidavits." Doc. 41 at second introductory paragraph.

17. A hearing on the defense suppression motion was held before Chief Judge Reiss on September 20, 2012. See Doc. No. 40. At that hearing, the government called Seth Fiore of the Department of Homeland Security as a witness. The hearing included extensive cross examination of the government's witnesses on several issues, including the effects of and extent of secured versus unsecured networks in this investigation. (That investigation led to a search warrant being issued for computers and computer evidence at the residence wherein Mr. Thomas resided.) That issue was explored at length particularly in the direct examination of Seth Fiore by the government and in my defense cross-examine of Agent Fiore.

Dated at Burlington, Vermont this 17th day of July 2017.

By: */s/ Michael L. Desautels*
MICHAEL L. DESAUTELS
Federal Public Defender

Office of the Federal Public Defender
District of Vermont
126 College Street, Suite 410
Burlington, VT 05401
(802) 862-6990