UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

        v.                             Crim. No. 5:12-cr-37

Derek Thomas

## <u>REPORT AND RECOMMENDATION</u>
## <u>AND ORDER</u>
(Docs. 148, 173)

Derek Thomas, proceeding *pro se*, moves under 28 U.S.C. § 2255 to vacate, set

aside, or correct the judgment imposed on him in this district in 2014.  (Doc. 148.)

On December 16, 2013, Thomas pleaded guilty to one count of production of child

pornography, a violation of 18 U.S.C. § 2251(a), pursuant to a conditional plea

agreement that permitted appeal of the district court's denial of his motions to

suppress evidence seized in the execution of a search warrant.  (Docs. 117, 140.)

Thomas was sentenced to a term of imprisonment of 180 months, to be followed by

an eight-year term of supervised release.  (Docs. 133, 138.)  On appeal, the Second

Circuit affirmed; and the Supreme Court subsequently declined to issue a writ of

certiorari.  *United States v. Thomas*, 788 F.3d 345, 354 (2d Cir. 2015), *cert. denied*,

136 S. Ct. 848 (2016) (mem.).

In his § 2255 Motion, Thomas raises "a total of forty-one issues," which he

argues entitle him to *vacatur* of his conviction and immediate release from federal

custody.  (Doc. 148 at 14.)  These allegations encompass claims of prosecutorial

misconduct (Doc. 148-1 at 52), judicial misconduct (*id.* at 68), "abandonment" by

defense counsel (*id.* at 41), ineffective assistance of counsel (IAC) before both the district court (*id.* at 26) and the Second Circuit (*id.* at 56), and cumulative error (*id.* at 71).

In response to Thomas's Motion, the government successfully sought an order compelling affidavits from Thomas's defense attorneys, Michael Desautels and Elizabeth Mann. (Docs. 160, 162, 163.) Relying in part on these affidavits, the government argues that Thomas's claims are meritless and thus that the court should deny his Motion. (Doc. 164.)

Subsequent to the government's responsive filing, Thomas filed a Motion seeking leave to exceed the page limit in his reply. (Doc. 173.) In the same Motion, Thomas also seeks the appointment of counsel. (*Id.* at 2.)

For the reasons stated below, I find that Thomas has failed to establish that the performance of either Attorney Desautels or Attorney Mann was objectively deficient, or that Thomas suffered any prejudice as a result of the alleged deficient performance. I further conclude that Thomas's other claims are waived or procedurally barred or both. I therefore recommend that Thomas's § 2255 Motion (Doc. 148) be DENIED. Additionally, although Thomas's request to exceed the page limit in his reply (Doc. 173) is GRANTED, his request to appoint counsel (*id.*) is DENIED as moot.

## Factual and Procedural Background

The following facts are derived from the records of this court, including: the October 15, 2012 Opinion and Order denying Thomas's pretrial Motion to Suppress

(Doc. 41), the November 8, 2013 Opinion and Order denying Thomas's pretrial

Motions to Suppress (Doc. 113), the March 2014 Presentence Investigation Report,

the transcripts of the change-of-plea hearing and the sentencing hearing (Docs. 138,

140), and the Second Circuit Court of Appeals' June 2015 Opinion affirming

Thomas's conviction, *United States v. Thomas*, 788 F.3d 345 (Doc. 144).

## I.    Offense Conduct, Pretrial Motions, and Plea of Guilty

Following the filing of the Criminal Complaint in this matter on March 2,

2012 (Doc. 1), the Office of the Federal Public Defender was appointed to represent

Thomas (Doc. 4).  On March 8, 2012, the grand jury returned a one-count

Indictment charging Thomas with knowingly possessing child pornography on or

about March 2, 2012, in violation of 18 U.S.C. § 2252(a)(4)(B).  (Doc. 7.)  On

October 25, 2012, the grand jury returned a Superseding Indictment charging

Thomas with two additional counts.  (Doc. 43.)  Count One charged him with

knowingly producing child pornography from in or about February 2012 to on or

about March 2, 2012, in violation of 18 U.S.C. § 2251(a).  (*Id.* at 1.)  Count Two

charged him with knowingly producing child pornography on or about February 15,

2012, also in violation of 18 U.S.C. § 2251(a).  (*Id.* at 2.)  Count Three charged

Thomas with knowingly possessing child pornography on or about March 2, 2012, in

violation of 18 U.S.C. § 2252(a)(4)(B).  (*Id.* at 3.)

Thomas's case was one of several cases filed in this district in 2012 as part of

"Operation Greenwave," a joint investigative effort by federal and state law

enforcement to identify Vermont perpetrators of child pornography-related crimes.

(Doc. 113 at 2; *see* Doc. 160 at 2–3.)  Investigators used a suite of computer forensic

tools called the Child Protection System (CPS) to automate their search of peer-to-peer (P2P) file-sharing networks for users offering to share files previously flagged by law enforcement as "child notable," meaning containing child pornographic content.  (Doc. 99 at 49–50, 52, 64, 83–84.)  The CPS produces to law enforcement officers trained in its use, reports of jurisdictionally relevant internet protocol (IP) addresses, which have offered to share child-notable files on P2P networks.  (*Id.* at 62–63.)

Operation Greenwave investigators learned that an individual associated with an IP address registered to a home in Colchester, Vermont had offered to share several files previously flagged as child notable.  (Doc. 28.)  Law enforcement submitted a search warrant application for the Colchester address, accompanied by an affidavit by Homeland Security Investigations Special Agent (SA) Seth Fiore.  (Doc. 33-1.)  A search warrant was issued by the Magistrate Judge (Doc. 115 at 3), and in the subsequent search of the residence, law enforcement officers conducted a "forensic preview" of Thomas's laptop, which revealed hundreds of videos and images that were presumptively classified as child pornography.  (*Id.* at 4.)  They seized the laptop and several other pieces of technology, and arrested Thomas.  (*Id.*)  The March Indictment followed.  (Doc. 7.)

Further investigation revealed that Thomas's illicit activities had not been limited to downloading and sharing child pornography through P2P networks.  The government discovered that Thomas had been "actively involved in the grooming and seduction of a real minor child . . . as well as the solicitation of child

pornography using this [c]hild." (Doc. 14 at 1–2.) Posing as a teenage boy, Thomas employed various cell phone applications, such as "KIK" and "Text Me" (*id.* at 2), to communicate with the 12-year-old daughter of an intimate partner, coercing and threatening the young girl into sending him sexually explicit videos of herself. (Doc. 140 at 17–18.) The discovery of this evidence led to the Superseding Indictment. (Doc. 43.)

On behalf of Thomas, Federal Public Defender Michael Desautels filed two Motions to Suppress. The first motion challenged whether the search warrant for the Colchester residence was supported by probable cause. (Doc. 28.) The second alleged the CPS software had "accessed hidden, non-public system files" in Thomas's computer "and was therefore an illegal search." (Doc. 47 at 1.) On September 20, 2012, the court held a hearing on the first Motion; and SA Fiore and one defense witness, Tor Borgestrom, testified. (Doc. 40.) The court denied that Motion in an Opinion and Order on October 15, 2012. (Doc. 41.)

In November 2012, Thomas filed a Motion requesting appointment of new counsel, and a hearing was held on the matter in December 2012. (Doc. 56; *see* Doc. 63.) Soon thereafter, then-Attorney Elizabeth Mann[1] was appointed as counsel for Thomas under the Criminal Justice Act, 18 U.S.C. § 3006A. (*See* Doc. 65.)

On March 25, 2013, Judge Mann filed two more Motions to Suppress. (Docs. 83, 84.) Because Thomas raised issues concerning the CPS forensic tool, similar to those advanced by two other Operation Greenwave defendants, and the

---

[1] Attorney Mann has since been appointed as a Judge of the Vermont Superior Court (*see* Doc. 156 at 2), and is therefore referred to as Judge Mann herein.

affidavits underlying the three challenged search warrants "used a common template" (Doc. 113 at 10), the court consolidated the Motions and held three days of common evidentiary hearings on April 17 and July 30–31, 2013, with testimony by law enforcement officers and expert witnesses (*id.* at 1). Thomas, through counsel, filed post-hearing memoranda (Docs. 104, 110), as did the government (Doc. 107). On November 8, 2013, the court denied all three of Thomas's Motions to Suppress, holding that the affidavits underlying each search warrant were sufficient as a matter of law. (Doc. 113 at 38.) On December 10, 2013, the court issued another opinion denying suppression based on Thomas's separate "unanticipated guest" argument. (Doc. 115.)

Thomas then entered into a written Plea Agreement with the government in which he agreed to plead guilty to Count One of the Superseding Indictment, charging him with the production of child pornography in violation of 18 U.S.C. § 2251(a). (Doc. 117.) In turn, the government agreed to move to dismiss the remaining two counts of the Superseding Indictment at the time of sentencing and consented to Thomas pleading guilty while reserving the right to appeal the district court's denial of his Motions to Suppress. (*Id.* at 7–8.) In the Plea Agreement, Thomas acknowledged that he understood the nature of the offense to which he would plead guilty and that he understood his constitutional rights, which he would waive by his plea of guilty. (*Id.* at 2, ¶ 5.) Thomas stated he was pleading guilty because he was, in fact, guilty of the offense of production of child pornography. (*Id.* at 1, ¶ 3.) Thomas acknowledged his understanding that he would plead guilty

to an offense that required the imposition of a 15-year mandatory minimum term of imprisonment. (*Id.*, ¶ 2.)

On December 16, 2013, Thomas appeared at his change-of-plea hearing. The court engaged in the complete colloquy required by Rule 11 of the Federal Rules of Criminal Procedure. Thomas stated under oath that he had had a full opportunity to review the Superseding Indictment and Plea Agreement and to discuss the charges and any defenses he might have with his attorney. (Doc. 140 at 6–7.) To the question posing if he was satisfied with his attorney's representation of him, he responded: "Yes, I am." (*Id.* at 7:8.) Upon further inquiry, Thomas indicated that he fully understood the Plea Agreement and that he had not been coerced into entering into it. (*Id.* at 7–10.) He verified his reservation of the right to seek appellate review of the court's adverse determinations in its opinions and orders denying his Motions to Suppress. (*Id.* at 8–9.)

The court then reviewed the elements of the offense charged in Count One and explained the minimum and maximum penalties Thomas faced as a consequence of his guilty plea. (*Id.* at 15–16.) Thomas assented to the government's characterization of the relevant facts,[2] including its proffer that he "persuaded, induced[,] and enticed the victim by, for instance, promising her presents and threatening to tell certain information to her friends if she did not comply to engage in sexually explicit conduct." (*Id.* at 17.) The government attested

---

[2] Judge Mann expressed disagreement with the prosecutor's inclusion of certain facts that are not relevant to the instant § 2255 Motion. The court excluded those facts from the factual basis required under Rule 11. (Doc. 140 at 20–22.)

that forensic examination of Thomas's telephone and the minor victim's telephone provided ample evidence of this conduct. (*Id.* at 18.) Thomas conceded the government could prove the elements of the offense beyond a reasonable doubt. (*Id.* at 16.) At the conclusion of the government's proffer, the court read Thomas the charge:

> From in or about February[] 2012 to [o]n or about March 2, 2012, in the District of Vermont and elsewhere, the defendant Derek Thomas did knowingly employ, use, persuade, induce, entice[,] and coerce a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct knowing and having reason to know that such visual depictions would be transmitted using a means and facility of interstate commerce and thereafter the visual depiction was so transmitted in violation of 18 U.S.C.[] Section 2251(a)[.]

(*Id.* at 22.) When asked for his plea to the accusation, Thomas responded, "Guilty." (*Id.*)

The court concluded that Thomas was fully competent and capable of entering an informed plea; that Thomas was aware of the nature of the charge and the consequences of the plea; and that the plea was knowing and voluntary, supported by an independent basis in fact. Accordingly, the court accepted the plea of guilty, and Thomas was adjudged guilty of the offense. (*Id.*)

## II. Sentencing

The Presentence Investigation Report (PSR) prepared by the United States Probation Office determined that, with respect to the advisory Sentencing Guidelines, the total offense level was 33, and Thomas's criminal history category was III. The resulting imprisonment range under the advisory Sentencing Guidelines ordinarily would have been 168–210 months. However, as the offense of

conviction carried a mandatory minimum 15-year sentence, the sentencing range became 180–210 months.

On March 31, 2014, Thomas appeared in the district court for sentencing, and the court adhered to the general sentencing requirements under Fed. R. Crim. P. 32(i) in conducting the hearing. (Doc. 138.) Following argument of counsel and allocution by Thomas, the court set forth detailed reasons for the sentence under 18 U.S.C. § 3553(a) and sentenced Thomas to the mandatory minimum term of 180 months' imprisonment, to be followed by an eight-year term of supervised release. (Docs. 133, 138 at 36–53.) Thomas was advised of his right to a direct appeal (Doc. 138 at 53–54), and the government's Motion to Dismiss Counts Two and Three of the Superseding Indictment was granted (*id.* at 57). Judgment was entered against Thomas the same day. (Doc. 133.)

## III.  Direct Appeal

On April 8, 2014, Thomas, still represented by Judge Mann, filed a Notice of Appeal exercising the right, reserved in the Plea Agreement, to appeal the denial of two of his Motions to Suppress. (Doc. 136.) Therein, Thomas raised two claims: (1) that the search warrant affidavit did not support a finding of probable cause; and (2) that "the warrant, if valid, did not authorize the search of his computer because he was an 'unanticipated guest' in the home where the search occurred." *Thomas*, 788 F.3d at 350 n.7.

The Second Circuit Court of Appeals rejected these claims, determining that "probable cause was sufficiently established in the affidavit at issue." *Id.* at 353.

The court summarily dismissed Thomas's "unanticipated guest" argument, noting that "agents confirmed before seizing Thomas's computer [that he] had been staying at the address listed on the affidavit for [ten] months," and finding that, if accepted, Thomas's argument would require the court to adopt "a novel interpretation of the Fourth Amendment." *Id.* at 350 n.7.

Thereafter, Judge Mann withdrew from her representation of Thomas (*see* Doc. 148-1 at 59), and Thomas filed an appeal to the Supreme Court, which declined to issue a writ of certiorari, *Thomas*, 136 S. Ct. 848.

## Analysis

### I. 28 U.S.C. § 2255 Motion

On December 27, 2016, Thomas filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct the judgment imposed upon on him. (Doc. 148.) Under § 2255(a), "a prisoner in custody" may collaterally attack his sentence on the ground that it "was imposed in violation of the Constitution or laws of the United States." The statute provides relief "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks omitted). As summarized above, Thomas claims multiple grounds for relief in his Motion, including prosecutorial misconduct, abandonment of defense counsel, ineffective assistance of counsel before both the district court and the appellate court, and cumulative error. (*See* Doc. 148-1.) As the petitioner, Thomas bears the

burden of establishing his claim under § 2255 by a preponderance of the evidence. *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000); *Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995).

Section 2255 petitioners face two major procedural hurdles. First, a § 2255 motion cannot be used to relitigate claims previously raised and decided on direct appeal. *See, e.g.*, *Yick Man Mui v. United States*, 614 F.3d 50, 53–54 (2d Cir. 2010); *Reese v. United States*, 329 F. App'x 324, 326 (2d Cir. 2009); *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001). A district court should dismiss a § 2255 motion raising claims already litigated on direct appeal, unless "there has been an intervening change in the law and the new law would have exonerated [the] defendant had it been in force before the conviction was affirmed on direct appeal." *Chin v. United States*, 622 F.2d 1090, 1092 (2d Cir. 1980). Conversely, under the "procedural default rule," a § 2255 motion cannot take the place of a direct appeal. *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *see United States v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998). Claims not raised on direct appeal are subject to dismissal for procedural default. However, the procedural default rule does not apply to IAC claims not raised on appeal. *Massaro v. United States*, 538 U.S. 500, 509 (2003); *see also Yick Man Mui*, 614 F.3d at 54.

## A.    Waiver and Procedural Default

"It is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the

court's jurisdiction." *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987) (citation omitted). Here, Thomas's Plea Agreement reserved only the denial of two of his Motions to Suppress for challenge on appeal. (Doc. 117 at 8, ¶ 14.) Accordingly, by his plea of guilty, Thomas has waived any pre-plea, non-jurisdictional claims, with the exception of his claims of ineffective assistance of counsel, which may be raised for the first time in his § 2255 Motion, *Massaro*, 538 U.S. 500 at 509.

Further, a claim not raised on direct appeal is subject to procedural default and generally may not be considered on collateral review. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (noting "a § 2255 motion is not a substitute for direct appeal"). Accordingly, Thomas's claims of prosecutorial misconduct, judicial misconduct, abandonment of defense, and cumulative error, were therefore waived as a consequence of his plea of guilty, and are barred by Thomas's procedural default as they were not raised on direct appeal. *See Hayle*, 815 F.2d at 88; *see also McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 72 n.1 (2d Cir. 2011) (noting that cumulative-error claims are procedurally barred where their component claims are procedurally barred).

Thomas also challenges the district court's use of a post-plea psychosexual evaluation at sentencing. Notwithstanding Thomas's guilty plea, this claim is not considered as having been waived because it arose after the guilty plea. Though Thomas entered a conditional guilty plea, he could have raised the issue on direct

appeal as a sentencing issue. Because Thomas could have raised the issue of the district court's use of a post-plea psychosexual evaluation at sentencing in his direct appeal, but failed to do so, the claim is procedurally defaulted.

Furthermore, relief under § 2255 is "generally available . . . only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). To obtain relief under § 2255 for a constitutional error, Thomas must prove the error had substantial and injurious effect or influence on the criminal proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). To obtain relief under § 2255 for a non-constitutional error, Thomas must demonstrate "a fundamental defect [in the criminal proceedings] which inherently result[ed] in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 348 (1994) (internal quotation marks omitted); *Hill*, 368 U.S. at 428. Here, Thomas received the mandatory minimum sentence under the offense of conviction. Clearly, Thomas cannot show error of constitutional or non-constitutional magnitude in the court's review of the evaluation.

A § 2255 movant may overcome procedural default of his claims by showing "(1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence." *Harrington*, 689 F.3d at 129. Aside from his IAC claims, Thomas has made no attempt to establish cause or prejudice. (*See* Doc. 160 at 19 (citing Docs. 148, 148-1); *see also* Doc. 174.)

Thomas has sporadically contended that he is actually innocent and the court has considered these claims. (*See* Doc. 160 at 20–22.) "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass" if he or she has otherwise procedurally defaulted federal habeas review of a claim. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013); *see also House v. Bell*, 547 U.S. 518, 536–37 (2006). The exception is limited to instances where the claim of innocence is both credible and compelling. *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012). A claim is credible if the petitioner sets forth new, reliable evidence that was not presented at trial. *Id.* A claim is compelling when the petitioner demonstrates that "no reasonable juror would have found [him] guilty[,] . . . in light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 329 (1995). This standard applies even where, as here, the petitioner pleaded guilty and did not proceed to trial. *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000).

Thomas alleges he is actually innocent of the production of child pornography because a "female minor" used his cell phone to send "sexually suggestive texts and photos" to "a boyfriend in another state." (Doc. 148-1 at 31.) Specifically, Thomas asserts that he:

> explained to Defense Counsel that the daughter of a female friend was using his cell phone to communicate with her boyfriend in Wisconsin and that the girl used her own KIK texting account plus other electronic messaging accounts on Petitioner's phone. Petitioner did not know that the girl was sending sexual images.

(*Id.* at 38.) In his Reply, Thomas criticizes the PSR, claiming the allegation that he "used the alias BDENZ to communicate with the alleged victim" is false, "as BDENZ

on the KIK network is regist[e]red to the alleged victim[']s boyfriend, [who] resid[es] in Wisconsin." (Doc. 174 at 36.) Because his counsel refused to investigate or raise this claim, he "felt that he had no other choice but to plead guilty to a crime he did not commit." (Doc. 148-1 at 38.) He posits that "[i]f Counsel had interviewed the female minor that used Petitioner's phone to send sexually suggestive texts and photos, [that interview] could have provided evidence to support a defense that Petitioner did not take and/or send child pornography by his phone." (*Id.* at 31.)

A court is "entitled to rely upon the defendant's sworn statements, made in open court." *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001). At his plea allocution, under oath, Thomas acceded to the government's characterization of his offense conduct. Specifically, after counsel asserted that Thomas disputed he had employed a camera to record the victim in her bathroom, Thomas affirmed that the government's description of his offense conduct was "accurate." (Doc. 140 at 21:19.) The government had explained that, after Thomas was arrested, both his telephone and the telephone of the minor were forensically examined, and:

> [O]n Mr. Thomas'[s] telephone were many of the Text Me messages that he had sent to the victim.
> And on the victim's phone were the identical text messages that the victim [had] sent to Mr. Thomas.
> And in connection with these messages . . . are the actual videos that were transmitted by the victim to Mr. Thomas.

(*Id.* at 18:16–19.)

Thomas does not offer any compelling evidence of innocence beyond the bald assertions in his filings to overcome his admissions under oath at the change-of-plea hearing. Because he has presented no reliable new evidence, Thomas's allegation of

actual innocence is patently incredible. *See Rivas*, 687 F.3d at 541. Further, given the total lack of new evidence of innocence, he fails to meet his burden to establish that no reasonable juror would have found him guilty. Therefore his asserted claim of innocence fails. *Id.* Accordingly, the actual innocence exception is unavailable, and Thomas simply cannot overcome the waiver and procedural default of his prosecutorial misconduct, judicial misconduct, abandonment of defense, use of psychosexual evaluation at sentencing, and cumulative error claims.

B.    **Standards Governing IAC Claims**

Because IAC claims are not subject to either waiver or the procedural bar, unlike his other claims, Thomas's IAC claims may be raised for the first time in a § 2255 motion. *Massaro*, 538 U.S. at 504, 509. In criminal proceedings, a defendant has a Sixth Amendment right to effective assistance from his attorney at all stages of the proceedings, including at the hearing to enter a guilty plea, *see, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see generally Missouri v. Frye*, 566 U.S. 134, 140 (2012), and at sentencing, *see, e.g.*, *Glover v. United States*, 531 U.S. 198, 202–04 (2001); *Mempa v. Rhay*, 389 U.S. 128, 134 (1967). The attorney has an "overarching duty to advocate the defendant's cause." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

In *Strickland*, the court established a two-prong test to determine whether a defendant's Sixth Amendment right to effective assistance of counsel has been violated. First, under the "performance" prong, a petitioner must show that trial counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms." *Id.* Second, under *Strickland's*

"prejudice" prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding"; rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 693–94; *see Lynn v. Bliden*, 443 F.3d 238, 248 (2d Cir. 2006). Additionally, the Second Circuit "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (citing *United States v. Gordon*, 156 F.3d 376, 380–81 (2d Cir. 1998) (per curiam)).

Regarding the first prong of the *Strickland* analysis, the question is not whether counsel "deviated from best practices or most common custom," but whether her representation "amounted to incompetence under 'prevailing professional norms.'" *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). In assessing the attorney's performance, a court "must apply a 'heavy measure of deference to counsel's judgments,'" *id.* (quoting *Strickland*, 466 U.S. at 691), and recognize a "strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance," *Palacios v. Burge*, 589 F.3d 556, 561 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996); and, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 588 (quoting *Strickland*, 466 U.S. at 690). However, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* (quoting *Strickland*, 466 U.S. at 690–91).

The two-prong test set forth in *Strickland* for evaluating IAC claims applies to claims raised by defendants who have been convicted pursuant to a guilty plea. *See Hill*, 474 U.S. at 57–58; *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996). In addition to showing that "counsel's representation fell below an objective standard of reasonableness," *Coffin*, 76 F.3d at 498 (quoting *Strickland*, 466 U.S. at 687–88), the defendant must "show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial,'" *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (quoting *Hill*, 474 U.S. at 59). Thus, the prejudice inquiry regarding an IAC claim in a guilty plea case "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process," *Hill*, 474 U.S. at 59, rather

than on whether "the result of the proceeding would have been different,"

*Strickland*, 466 U.S. at 694.

Thomas bears the burden of proving his IAC claims by a preponderance of the evidence. *See United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004) ("The burden of establishing both constitutionally deficient performance and prejudice is on the defendant."); *see also Triana*, 205 F.3d at 40 (petitioner failed to demonstrate a divergence between his interests and those of his attorneys on any factual matter, legal issue, or course of action).  Self-serving, conclusory allegations are insufficient to establish ineffective assistance of counsel.  *See United States v. Torres*, 129 F.3d 710, 715–17 (2d Cir. 1997).

### 1. Analysis of Thomas's IAC Claims

Thomas makes many allegations of IAC during proceedings in the trial and appellate courts.  (*See* Doc. 160 at 8–15.)  These allegations relate to: Thomas's citizenship status; counsel's purported refusal to interview and call defense witnesses; counsel's purported refusal to investigate, obtain, and review discovery; counsel's purported failure to pursue pretrial Motions to Suppress and a suppression hearing; counsel's purported failure to challenge alleged perjury by government witnesses; counsel's purported failure to raise the issue of prosecutorial misconduct; counsel's purported failure to object in order to preserve issues; the voluntariness of Thomas's guilty plea; and counsel's improper withdrawal as counsel for Thomas.  (*Id.*)

To facilitate the disposition of IAC claims, lower courts may consider either prong of the *Strickland* test first. *Greiner*, 417 F.3d at 319 ("[T]here is no reason for a court deciding an [IAC] claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." (second alteration added) (quoting *Strickland*, 466 U.S. at 690)). As explained below, none of Thomas's arguments satisfy the demanding standards of *Strickland*.

### a.     Thomas's Citizenship Status

Thomas argues that, at the time of his arrest, he was a Canadian citizen residing in the United States with a "green card" authorization to be present in the United States. (Doc. 148-1 at 28.) The PSR does list an associated Alien Registration Number for Thomas, but it also indicates that Thomas is a citizen of the United States (PSR at 2), specifically quoting a report indicating that Thomas "was determined to be a United States citizen by U.S. Customs and Border Protection officers on October 26, 2012," (*id.* at 19, ¶ 87(i)). Thomas contends that this report was incomplete and incorrectly classified him as an American citizen; and argues that Attorney Desautels and Judge Mann should have objected to the report, and should have notified Thomas that he could be deported upon his release from prison if he pleaded guilty. (Doc. 148-1 at 49–50.) Thomas further contends that counsel did not preserve the issue of his citizenship for appeal, thus "depriving him of his Canadian citizenship." (*Id.* at 50.) In particular, Thomas claims that Judge Mann "fail[ed] to follow Petitioner's wish for a final ruling and/or resolution [of] his citizenship status, which caused Petitioner to be prejudiced by denying him

certain privileges and/or proceedings and due process rights as a Canadian citizen." (*Id.* at 28.)

Thomas's current assertion of Canadian citizenship is at odds with Attorney Desautels' and Judge Mann's affidavits. In Attorney Desautels' recollection, Thomas's "citizenship status was not a significant issue." (Doc. 162 at 2, ¶ 6.) In Judge Mann's recollection, it was Thomas who insisted he was in fact a United States citizen as the PSR concluded. (Doc. 163 at 2; *id.* at 4 ("Petitioner rejected the advice of counsel because he was insistent that he was a US citizen.").) Judge Mann "allowed for the possibility as asserted by [P]etitioner in his Presentence Interview that while he had obtained US citizenship, he had retained rights as a Canadian citizen and could be considered to have dual citizenship." (*Id.* at 3.) Importantly, Judge Mann states that she reviewed the PSR with Thomas "in detail[,] and he expressed no concern with or objection to the conclusion [therein] that he was a United States citizen." (*Id.* at 1–2.) This statement is corroborated by the fact that Thomas stated in court that he personally read the draft PSR and reviewed the final PSR with Judge Mann and that there were no factual errors contained therein. (Doc. 138 at 3.)[3] In light of his concession—which is presumed to be accurate, *United States v. Davis*, 48 F. App'x 809, 811 (2d Cir. 2002) (in-court statements carry a "strong presumption of verity" (internal quotation marks omitted))—

---

[3] While Thomas goes to great lengths in his Reply to argue that Judge Mann did not review the final PSR with him (*see* Doc. 174 at 4–5), he does not refute his statement that he personally had read the draft PSR and that counsel had reviewed all revisions to that draft with him. Significantly, Thomas declined the court's invitation to adjourn his sentencing hearing to permit him additional time to conclude his in-court review of the final PSR. (*See* Doc. 138 at 2–3.)

Thomas has failed to show that he is not a United States citizen, and thus has failed to meet his burden of showing that Judge Mann's failure to challenge the PSR's determination with respect to Thomas's citizenship status was clearly incompetent.

Even if Judge Mann's representation fell below an objective standard of reasonableness, Thomas fails to demonstrate any resulting prejudice. The position of the government, as stated in the PSR, is that Thomas is a United States citizen and Thomas has not shown that he is the subject of any removal proceedings. In these circumstances, Thomas has failed to meet his burden to show he was prejudiced by the actions of counsel.

### b. Counsels' Alleged Refusal to Interview and Call Defense Witnesses

Thomas contends that he requested both Attorney Desautels and Judge Mann interview several people in connection with his case for the purpose of cultivating potential defense witnesses, but that both lawyers declined to do so. In particular, Thomas claims that he wanted his lawyers to interview the residents of the Colchester home where he was first apprehended and where one of Thomas's female partners and her two minor sons resided. (Doc. 148-1 at 31.) Thomas believes these three individuals could have testified to (1) the "unsecure[d]" status of the home's wireless router (*id.*), (2) the fact that law enforcement questioned one of the minors without a parent present (*id.*), and (3) "whether [Thomas] was at the residence on the alleged date and times [he] was supposedly sharing child pornography" (*id.* at 51–52). He also contends that his lawyers should have interviewed and called an unnamed individual who "could have provided

impeachment evidence against one of the government's witnesses." (*Id.* at 52.)
Finally, Thomas alleges that counsel failed "to question the individual who used
[his] phone to send text messages and photos to a boyfriend in another state." (*Id.*
at 31.)

Thomas's claims are undermined by the credible affidavits of counsel.
Attorney Desautels states that he and his staff interviewed "all persons who might
have aided an aspect of [Thomas's] defense." (Doc. 162 at 2, ¶ 7.) Desautels further
states that he has no recollection of Thomas requesting that his female partner or
her children be interviewed. (*Id.*) Judge Mann states that she did in fact interview
Thomas's female partner. (Doc. 163 at 5.) Judge Mann did not interview the two
minor children concluding "[t]here was no need[,] . . . as their testimony would have
been duplicative of their mother's" (*id.* at 6). Mann also avers that Thomas's female
partner never yielded the telephone records that the partner had initially suggested
*might* have revealed dates of communications between her and Thomas. (*Id.*)

Regarding counsels' failure to question "the individual who used [Thomas's]
phone" (Doc. 148-1 at 31), Thomas continues to engage in speculation[4] and fails to
show that this "individual" would have given testimony favorable to Thomas. *See*
*United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987) ("Airy generalities,
conclusory assertions[,] and hearsay statements will not suffice [to establish a
genuine issue of material fact] because none of these would be admissible evidence

---

[4] Judge Mann reasonably notes that she did not question the minor victim because she
believed her mother would not have allowed it, and Thomas had no right to such an interview.
(Doc. 163 at 6–7.)

at a hearing.").  Given the heavy measure of deference accorded counsel's decisions,

Thomas has failed to meet his burden of showing that his attorneys were objectively

deficient in their interviewing of witnesses.  Thomas has also failed to show that,

had his attorneys interviewed or called the relevant witnesses, he would have opted

not to plead guilty, thereby assuming the risk of conviction at trial and greater

sentencing exposure for failing to manifest acceptance of responsibility for the

exceedingly serious crimes.

### c.      Counsels' Alleged Failure to Investigate

Thomas raises a number of claims under the umbrella of "failure to

investigate."  (*See, e.g.*, Doc. 148-1 at 38.)  First, he states that Attorney Desautels

and Judge Mann should have investigated why the government did not find the P2P

program Shareaza installed on his computer at the time it was reviewed by a

forensic analyst.  (*Id.* at 33.)  Second, he claims that if Judge Mann had obtained

access to the source code of the software used in his case, she could have

successfully demonstrated that it "relied upon unverified and/or tested allegations of

offers to share child pornography based on an anonymous third party."  (*Id.* at 34.)

Thomas now contends that he "asked Defense Counsel to request a copy of the

source code under *Jencks [v. United States*, 353 U.S. 657, 672 (1957)] so as to show

that [his] computer was never actually queried for child pornography."  (*Id.* at 41.)

Third, Thomas alleges that neither of his lawyers investigated the fact that law

enforcement used a "historical" investigative technique (*id.* at 36), under which,

according to Thomas, "[n]o follow up was done to see if a crime had been committed"

(*id.* at 44).  Fourth, he contends that Judge Mann "refused to investigate and/or raise the claim that the search warrant lacked particularity" both "because it was used as a general search" and because it "did not particularize a specific crime for which probable cause was found." (*Id.* at 37.)  Fifth, Thomas argues that neither lawyer investigated "issues of [O]fficer Eno's training and knowledge of proper investigative procedures." (*Id.* at 41.)  Finally, Thomas advances a general claim that both of his attorneys failed to investigate his assertion that he was actually innocent of the knowing production or possession of child pornography. (*Id.* at 38–39.)

The duty to investigate requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  Where there is "reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.*

Here, the affidavits of counsel show that they made reasonable investigations on some matters and reasonable decisions not to investigate on other matters. (*See* Doc. 162 at 2–3, ¶¶ 8–10; Doc. 163 at 7–11.)  Specifically, Judge Mann hired a forensic expert to analyze Thomas's computer and that expert found that the Shareaza file-sharing program had been installed. (Doc. 163 at 7–8.)  Defense counsel for the Operation Greenwave defendants, including Judge Mann, obtained a demonstration of the software by its creator, William Wiltse, and included their computer experts in the demonstration and question session. (*Id.* at 8.)  With

regard to the "historical" nature of the law enforcement investigation, Judge Mann's affidavit contradicts Thomas's assertion that no investigation was undertaken, positing that "[c]ountless hours were devoted to investigating and identifying the investigative techniques employed by law enforcement in this and other [Greenwave] cases," resulting in "a complete understanding of all of the steps . . . taken by law enforcement." (*Id.* at 8–9.)

Judge Mann responds to Thomas's contention that she refused to investigate or raise the claim that the search warrant lacked particularity by stating that, in her opinion, the warrant did particularize a specific crime and did not amount to a general warrant, and thus there was no basis for such a challenge. (*Id.* at 9–10.) The failure to make a meritless argument does not establish ineffective assistance. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001).

Judge Mann's affidavit also refutes Thomas's allegation that Officer Eno's training and knowledge were not challenged, by noting that Officer Eno testified and was cross-examined regarding "his general experience as a law enforcement officer as well as his more specialized experience as a detective serving on the Internet Crimes Against Children task force and in peer[-]to[-]peer network investigations like the one involved in this case." (Doc. 163 at 11.)

Lastly, Thomas's claim that counsel failed to investigate his allegation that he was actually innocent is directly contradicted by Judge Mann's affidavit. Judge Mann states that, in an effort to demonstrate that Thomas could not have possessed child pornography located in folders on his computer designated for sharing, she

met with the original expert hired by Attorney Desautels' office and subsequently

engaged a different computer expert to conduct an independent forensic

examination of Thomas's computer files. (*Id.*) Furthermore, Mann states that

Thomas "never asserted his actual innocence as to . . . allegations [of production of

child pornography] and, to the contrary, made admissions regarding said

production."[5] (*Id.*)

For these reasons, Thomas has failed to meet his burden of showing that

defense counsel did not conduct a reasonable investigation of his claims.

### d.    Discovery

Thomas alleges that both Attorney Desautels and Judge Mann failed to

review all of the evidence provided during discovery. (Doc. 148-1 at 52.) He also

contends that counsel did not review certain key items of discovery with him,

denying him the opportunity to provide explanations of that material. (*Id.* at 53.)

Further, Thomas alleges that defense counsel should have investigated and objected

to the government's production of several "reports, documents[,] and [e]-mails . . .

that had sections redacted[] without expla[nation] or justif[ication] [of] the need for

th[ose] redactions." (*Id.* at 46.)

Thomas's contention that counsel did not review evidence produced in

discovery is directly contradicted by the affidavits of his former attorneys. Attorney

---

[5] Thomas strongly disputes that he made admissions to Judge Mann regarding his production of pornography, stating: "Petitioner unequiv[ocal]ly denies he ever told Counsel Mann he coerced a minor . . . into producing child pornog[]raphy." (Doc. 174 at 28.) But the Second Circuit "requires some objective evidence other than defendant's assertions to establish prejudice" regarding counsel's alleged deficient performance. *Pham*, 317 F.3d at 182.

Desautels avers, "I reviewed all the evidence provided by the government during discovery." (Doc. 162 at 3, ¶ 11.) And Judge Mann states, "[I] believe[] that [I] reviewed all of the available discovery in this matter." (Doc. 163 at 12.) Desautels and Mann also state that, to the extent possible, they reviewed the discovery with Thomas. (*See id.*; Doc. 162 at 3, ¶ 11.) Both attorneys further affirm that they were satisfied that the redactions in discovery materials were appropriate and did not prejudice Mr. Thomas. (Doc. 162 at 3, ¶ 12; Doc. 163 at 13.) Against this backdrop, Thomas's allegations that his attorneys did not review the discovery evidence, failed to discuss this evidence with him, and failed to effectively investigate the redactions in this evidence, are insufficient to satisfy Thomas's burden of proof.

### e.     Pretrial Motions to Suppress

Thomas contests the decision of each of his attorneys to omit the argument in their Motions to Suppress that "Law Enforcement did not . . . check to see if the wireless router at the target I.P. address was secure." (Doc. 148-1 at 30.) He further alleges that Judge Mann "refused [his] request to appeal [the] denial of his motion to suppress." (*Id.* at 24.) According to Thomas, Judge Mann told him that "no further motions or actions could be taken" after the trial court issued the adverse ruling. (*Id.*; *see* Docs. 113, 115.)

Thomas's allegations are belied by the record including his attorneys' affidavits. Attorney Desautels accurately states that the suppression Motions he filed "did raise issues pertaining to whether a wireless router at the target IP address was secure." (Doc. 162 at 3, ¶ 13 (citing Doc. 28 at 2 ("The agents did not

determine . . . whether the wireless network associated with the IP address was secured or unsecured.")).)  In fact, in Thomas's July 9, 2012 Motion to Suppress, Desautels argued:

> The existence of the numerous wireless networks, both secured and unsecured, significantly weakens the nexus between the items sought and the place to be searched.  Without determining whether the wireless network utilizing the IP address was secured, the authorities had no way of satisfying the Fourth Amendment's particularity requirement and ensuring that it was in fact the subscriber or an authorized user that was committing the offense in question.

(Doc. 28 at 6.)  Furthermore, at the suppression hearing, counsel raised the issue of whether "the search warrant was invalid because of material omissions from the supporting affidavit."  (Doc. 41 at 1.)

According to Judge Mann, after the denial of Thomas's second set of suppression Motions, she advised Thomas that an interlocutory appeal was not available, explaining that he could only appeal the adverse ruling if he was convicted at trial.  (Doc. 163 at 14.)  To this end, the Plea Agreement Mann negotiated specifically included the reservation of Thomas's right to appeal the denial of his Motions to Suppress.  (Doc. 117 at 8, ¶ 14.)  Mann also reasonably advised Thomas that a motion to reconsider lacked merit in light of the record. (Doc. 163 at 14.)

In addition to the above deficiencies in Thomas's claim regarding counsels' failures regarding his pretrial Motions to Suppress, Thomas fails to demonstrate any resulting prejudice, given that he ultimately did exercise his reserved right to appeal the denial of these Motions.  Therefore, Thomas has failed to meet his

burden of showing that his attorneys were ineffective regarding their pursuit of his pretrial Motions to Suppress.

### f.     Suppression Hearing

Thomas raises a number of issues with respect to the consolidated evidentiary hearing held on April 17 and July 30–31, 2013. (*See* Doc. 113 at 1.) First, Thomas claims that Judge Mann was ineffective when she "did not object to the joining of Petitioner's Motion to Suppress with two other cases [at] the hearing." (Doc. 148-1 at 43.) Thomas claims that due to the nature of the joint hearing, defense counsel allowed the prosecution to mislead the court into thinking that the Peer Spectre software was used in his case, when it was actually relevant only to the other Operation Greenwave investigations. (*Id*. at 33–34, 43.) Next, Thomas takes issue with Judge Mann's failure, during the joint hearing, to object to the classification of William Wiltse, developer of the CPS, as an expert witness. (*Id*. at 40.) Finally, Thomas claims that Judge Mann should have raised the argument that "the software being used would search incomplete files," meaning files that were "in the process of being downloaded," and Thomas would be unaware of the content of those files. (*Id*.)

Thomas's claim that the court was somehow misled as a result of the joint hearing regarding the application of Peer Spectre to this case is contradicted by the November 8, 2013 Opinion and Order, which makes specific findings relating to the use of other software programs and ultimately determines that law enforcement was not required to provide all the details of its investigation in the search warrant

application to support probable cause. (*See* Doc. 113 at 8–9, 28, 30–31.) With

respect to the designation of Wiltse as an expert, Judge Mann states that she made

a strategic determination that there was no basis to object to that designation and

further notes that counsel for the other defendants came to the same conclusion.

(Doc. 163 at 16.) The court should refrain from second guessing this determination.

*DeLuca*, 77 F.3d at 588 ("strategic choices made after thorough investigation of law

and facts relevant to plausible options are virtually unchallengeable" (quoting

*Strickland*, 466 U.S. at 690)).

Judge Mann's affidavit also makes clear that Thomas's claim of "incomplete

files" being searched was in fact addressed during the suppression hearing.

(Doc. 163 at 16.) Thomas's claim appears to be founded on the differences between

the two types of electronic file identity systems known as MD4 and SHA1, and

purported false statements by the affiants with regard to these systems. In its

Opinion and Order, the court thoroughly considered the claim that the applicable

warrant application falsely claimed that an MD4 hash value could be converted to a

SHA1[6] value, that the search warrant affidavits failed to accurately describe the

process for hashing a file, and that the affiants incorrectly stated that partially

downloaded files will not be shown as available for sharing. (Doc. 113 at 5.) But the

court concluded that in the absence of any evidence that cross-referencing was

either technologically unfeasible or not reliably performed, the additional evidence

---

[6] As explained by the court, the SHA1 value, described as a digital fingerprint for an electronic file, consists of 32 characters and was developed by the National Security Administration in 1992. (Doc. 113 at 5.) MD4 is an alternative hash value identification system used in the eDonkey Network. (*Id.*)

would contribute little to the probable cause determination. (*Id.* at 37–38.) The court stated: "If the affidavits were corrected to reflect [that incomplete files may be made available for sharing], Defendants do not explain how the probable cause determination would be affected[; and thus,] . . . this does not defeat a finding of probable cause." (*Id.*)

Again, in light of the thorough consideration of the issue by the district court, Thomas fails to satisfy his burden of showing that his attorneys' representation of him in connection with the suppression hearing fell below an objective level of reasonableness.

### g. Allegations of Perjury by Government Witnesses

Thomas next asserts that Judge Mann ignored his concerns that several government witnesses committed perjury. (Doc. 148-1 at 28.) He particularly complains that defense counsel failed to investigate and raise the claim that SA Fiore perjured himself by intentionally including false or misleading information in his search warrant affidavit. (*Id.* at 29, 47.) Further, Thomas claims that SA Fiore omitted from his affidavit information relevant to probable cause. (*Id.* at 29.) Thomas asserts that "[l]aw enforcement commit[t]ed perjury and falsified investigative reports by stating they surveilled a location and had seen a car at an address that had been sold [six] months prior, and implied and stated [that Thomas] resided at that location, when in fact he had moved a year prior to the agents['] observations." (Doc. 148 at 7; Doc. 148-5.) According to Thomas, Agent Fiore also provided false testimony to this effect "in the first Suppression hearing." (Doc.

148-1 at 28.) Thomas claims that he asked Judge Mann "to request a *Franks* hearing concerning the perjurious statements contained in the Affidavit in support [of] a search warrant," but she refused. (*Id.* at 48.)

The issues regarding SA Fiore's representations relating to Tor Borgestrom were considered by the court in its October 15, 2012 Opinion and Order denying Thomas's first Motion to Suppress. The court discussed Thomas's challenges to SA Fiore's credibility based on the alleged falsehood regarding Mr. Borgestrom's residence and vehicle, and found that "any discrepancy in Agent Fiore's supplemental report regarding an unrelated vehicle identification [was] immaterial," and that "Agent Fiore's testimony [was] credible." (Doc. 41 at 4.) Given these findings, and the lack of new evidence, Judge Mann decided not to revisit the issues pertaining to SA Fiore's statements regarding Mr. Borgestrom. (Doc. 163 at 17–18.) This conclusion was a reasonable determination of counsel that should not be disturbed.

Accordingly, Thomas has failed to meet his burden of showing that Judge Mann's handling of his allegations of perjury by government witnesses was incompetent under prevailing professional norms.

### h. Counsels' Alleged Failure to Raise Prosecutorial Misconduct

Thomas has alleged that a lawyer for the United States Attorney's Office "threatened [a] witness with incarceration if the witness testified for the defense," but that Judge Mann refused to raise this claim. (Doc. 148-1 at 31; Doc. 148-5.) Thomas further states that the "prosecution's conduct of witness tampering and/or

intimi[]dation" deprived him of a defense witness "who would have testified that the lead Federal investigator provided false government records . . . and committed perjury." (Doc. 148-1 at 32.) Thomas submits statements by Diane Jarvis and Tor Borgestrom advising that, if they were asked to testify on behalf of Thomas, they each would have declined because of the prosecutor's intimidation. (*See* Docs. 174-10, 174-11.)

As Mr. Borgestrom's statement reveals, the purported incident of witness intimidation occurred following the hearing on the first Motion to Suppress. (Doc. 174-11.) At that time, Attorney Desautels was Thomas's attorney. Though the court had already concluded that information regarding Borgestrom was immaterial to resolution of the case, Judge Mann avers that she attempted to contact Borgestrom regarding this event. (Doc. 163 at 18.) But Borgestrom had already testified, and the purported incident could not have influenced his testimony or harmed Thomas's case. Accordingly, Thomas has failed to meet his burden of showing that Judge Mann's performance was deficient or that Thomas was prejudiced by her failure to raise the issue.

### i. Counsels' Alleged Failure to Object to Preserve Issues

Thomas argues that Judge Mann should have objected to several issues in an attempt to preserve them. These issues include: (1) the production of incomplete discovery due to improper redaction; (2) the consolidation of suppression hearings with two other Operation Greenwave defendants; and (3) the destruction of evidence by law enforcement, that evidence being the statements of "a computer expert" who

searched Thomas's computer and "found no [S]hareaza software installed." (Doc. 148-1 at 51.)

For the most part, these issues have already been considered above and rejected as bases for a cognizable IAC claim. Additionally, these claims are barred by Thomas's guilty plea. As previously stated, a guilty plea waives all non-jurisdictional defects in the district court proceedings. *See United States v. Rubin*, 743 F. 3d 31, 35 (2d Cir. 2014). While Thomas entered a conditional guilty plea reserving the right to appeal the denials of his suppression Motions, as allowed by Federal Rule of Criminal Procedure 11(a), he could not reserve the right to challenge the other issues on appeal. *See* Fed. R. Crim. P. 11(a)(2) ("With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion."). Therefore, Thomas has failed to meet his burden of showing he suffered prejudice from Judge Mann's alleged failure to preserve these issues because they could not have formed the basis of an appeal following his entry of a plea of guilty.

### j. Allegation that Thomas's Plea was Involuntary

Thomas alleges that his guilty plea was involuntary, i.e., that he pleaded guilty to production of child pornography only because he was "brow-beaten by Defense Counsel into accepting a Plea deal." (Doc. 148-1 at 25.) He contends that, "[b]ecause [of] Defense Counsel's failure to investigate [his] claim that he did not produce . . . nor knowingly possess child pornography, [he] felt that he had no other

choice but to plead guilty to a crime he did not commit because of the fear of receiving a far longer sentence." (*Id.* at 38.) Thomas states that he "felt he had to plead guilty because Defense Counsel allowed him no defense." (*Id.* at 52.)

"[A] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *United States v. Doe*, 537 F.3d 204, 211 (2d Cir. 2008) (quoting *Machibroda v. United States*, 368 U.S. 487, 493 (1962)). The Supreme Court has held that threats, promises, or misrepresentations may provide grounds for an attack on the voluntary nature of a guilty plea. *See Brady v. United States*, 397 U.S. 742, 755 (1970). Here, while Thomas alleges counsel "brow-beat" him into pleading guilty (Doc. 148-1 at 25), this post-hoc claim of attorney coercion is inadequate and insufficient to overcome Thomas's own prior statements under oath that he was not threatened, pressured, or coerced into signing the Plea Agreement or entering his plea of guilty. *Davis*, 48 F. App'x at 811 ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw [a] guilty plea." (internal quotation marks omitted)). As discussed above, during his plea allocution, Thomas admitted his guilt under oath; and stated that his plea was free and voluntary, that no threats or promises had been made to induce his plea, and that he was satisfied with his representation. His in-court statements carry a "strong presumption of verity," *id.* (internal quotation marks omitted), and create a "formidable barrier" to habeas relief, *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Furthermore, defense counsel's "blunt rendering of an honest but negative assessment of [defendant's] chances at trial,

combined with advice to enter the plea," does not constitute improper behavior or coercion that would suffice to invalidate a plea. *See United States v. Juncal*, 245 F.3d 166, 172 (2d Cir. 2001).

Thus, Thomas has failed to meet his burden of showing that his plea of guilty was involuntarily.

### k.    Allegedly Ineffective Representation on Appeal

Thomas also alleges that Judge Mann's representation of him on appeal was ineffective. He contends that during his appeal, Judge Mann "was applying for a position in the [U.S. Attorney's Office], [and] thus, there was an appearance of currying favor." (Doc. 148-1 at 57.) Further, Thomas contests Judge Mann's decision to raise the sufficiency of the search warrant on direct appeal, because, "if Counsel had reviewed the case, she would have known that [this] claim . . . , in the appeal, was conceded by herself during the trial proceedings." (*Id.* at 26.) Thomas also claims that Judge Mann erred in refusing to appeal the denial of one of his Motions to Suppress. (*Id.* at 56.) Although it is unclear to which Motion to Suppress Thomas refers, he states that he wanted counsel to raise a number of grounds in an appeal, including that: "the search warrant was fatally flawed[;] Law Enforcement did not provide probable cause for the crime described in the first paragraph of attachment 'B'[;] and false and/or misleading information was given by Law Enforcement in seeking a search warrant." (*Id.*) Finally, Thomas argues that neither of the issues raised by Judge Mann in his appeal was a strong argument, and that Judge Mann "ignored much stronger c[la]ims." (*Id.* at 58.)

Judge Mann responds that she disclosed to Thomas her application to the United States Attorney's Office, which she submitted after filing Thomas's appeal, and that she offered to move to withdraw as counsel for Thomas, but Thomas declined. (Doc. 163 at 22.) In these circumstances, Thomas fails to satisfy either of *Strickland's* twin prongs. Applying for a position as an assistant United States attorney while serving as defense counsel does not, in itself, create an actual conflict of interest. *United States v. Bernard*, 762 F.3d 467, 476–77 (5th Cir. 2014); *Garcia v. Bunnell*, 33 F.3d 1193, 1198–99 (9th Cir. 1994); *United States v. Horton*, 845 F.2d 1414, 1419 (7th Cir. 1988). Moreover, assuming arguendo that this created a conflict, Thomas fails to show that the outcome of his appeal would have been different had Judge Mann not submitted the application or withdrawn from representing Thomas. *Mickens v. Taylor*, 535 U.S. 162, 166–75 (2002); *Pham*, 317 F.3d at 182 (requiring "some objective evidence other than defendant's assertions to establish prejudice").

Regarding Thomas's arguments concerning the issues raised on appeal, Thomas has failed to meet his burden to state an IAC claim. Ordinarily, appeal of Thomas's pretrial Motions to Suppress would not have been available, given Thomas's plea of guilty. Judge Mann negotiated a conditional Plea Agreement under Rule 11(a)(2), however, thus allowing Thomas to appeal the denials of his Motions to Suppress. (Doc. 163 at 23; Doc. 117 at 8.) Judge Mann states that the appeal filed with the Second Circuit was indeed limited to the issues presented as a result of this Plea Agreement. (Doc. 163 at 23.) Nonetheless, the court should

decline to second-guess Judge Mann's reasonable professional judgment regarding issue selection.

Thomas's claim of ineffective representation on appeal are simply without merit because there is no "duty to raise every 'colorable' claim suggested by a client." *Jones v. Barnes*, 463 U.S. 745, 754 (1983).

### l. Counsel's Alleged Improper Withdrawal

Thomas alleges that Judge Mann "improperly withdr[ew]" from his representation after the Second Circuit appeal, because she was not in compliance with Local Rule 4.1(d)(2)(A–E) and "did not explain to [Thomas] his right to appeal the Appellate Court's affirmation of his conviction, how to file a [W]rit of Certiorari[,] or any time limits." (Doc. 148-1 at 59.)

According to Judge Mann, she forwarded the appellate decision in this case to Thomas the day after she received it and requested that Thomas call her. (Doc. 163 at 24.) Thomas did not contact Mann, however, instead electing to file with the Second Circuit a *pro se* motion for rehearing and notice of his intent to proceed *pro se*, including a statement that "Attorney Mann no longer represents me." (*Id.*) The day after receiving a copy of Thomas's filing, Judge Mann filed a motion to withdraw as well as a motion for additional time for Thomas to file his motion for rehearing as his *pro se* filing was late. (*Id.*) The Second Circuit granted the motion to withdraw and deemed timely Thomas's *pro se* motion for rehearing. As Mann notes, because the case was still before the Court of Appeals, there was no basis or time frame for a writ of certiorari to be explained. (*Id.*) More importantly, Thomas

had already indicated that Mann no longer represented him. (*Id.* at 24–25.) Thomas's argument that Judge Mann's representation was somehow deficient for proceeding in a manner that resulted in Thomas receiving what he requested, namely the right to proceed *pro se*, is meritless.

Thomas ultimately bears the burden of proving the truth of his claims that Attorney Desautels' and Judge Mann's performances were constitutionally deficient. His current uncorroborated and self-serving assertions are not borne out by either attorneys' credible affidavits or the record as a whole. Thus, Thomas's *Strickland* claims fail.[7] Moreover, because he has not carried his burden to show his sentence was imposed in violation of the Constitution or laws of the United States, Thomas's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence (Doc. 148) should be DENIED.

## C. Hearing Requirement

In ruling on a § 2255 motion, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Pham*, 317 F.3d at 185 (§ 2255 does not permit summary dismissals of motions that present facially valid claims). However, § 2255 does not entitle the defendant to a hearing where his allegations are "vague, conclusory, or palpably incredible." *Machibroda*, 368 U.S. at 495; *see Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001). To

---

[7] To the extent Thomas raises additional claims in his Reply (Doc. 174), courts generally do not consider claims raised for the first time in a reply. *Keefe v. Shalala*, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995). Even if the court were to consider these claims, they would fail because they are conclusory, self-serving, and unsupported by the record.

warrant a hearing, the defendant's motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact which, if proved at a hearing, would entitle him to relief. *See Machibroda*, 368 U.S. at 494; *Aiello*, 814 F.2d at 113–14. For the reasons stated above, Thomas has failed to make this showing, and thus no hearing is required.

## II.     Thomas's Motion to Appoint Counsel

Because Thomas has failed to raise any issues in his § 2255 Motion that would entitle him to relief, it would not be in the interest of justice to provide him counsel. *See United States v. Moses*, No. 1:05-cr-133-jgm, 2014 WL 104012, at *17 (D. Vt. Jan. 9, 2014); *United States v. Doe*, No. 01 CR. 782(GEL), 2005 WL 167601, at *7 (S.D.N.Y. Jan. 25, 2005) ("The 'interests of justice' do not 'require' further expenditure of public funds for the appointment of counsel to pursue a meritless argument still further."); *see also* 18 U.S.C. § 3006A(a)(2)(B) ("Whenever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28."). Therefore, Thomas's request to appoint counsel (Doc. 173 at 2) is DENIED AS MOOT.

## Conclusion

For the foregoing reasons, I recommend that Thomas's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence (Doc. 148) be DENIED without a hearing. Thomas's Motion seeking leave to exceed the page limit in his reply (Doc. 173) is GRANTED and his request to appoint counsel (*id.* at 2) is DENIED as moot.

I further recommend that the court refrain from issuing a certificate of appealability. In a § 2255 proceeding, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, a certificate will not issue unless reasonable jurists could debate whether the petition should have been resolved in a different manner, or the issues are "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). I am unable to find that reasonable jurists could debate whether Thomas's § 2255 Motion should have been resolved in a different manner; accordingly, Thomas does not satisfy this standard and I recommend that a certificate of appealability be DENIED.

Dated at Burlington, in the District of Vermont, this 30th day of August 2018.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).